IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICKY JACKSON,<br><br>                Petitioner,<br><br>       vs.<br><br>ANTHONY J. ANNUCCI, Acting Commissioner, New York Department of Corrections and Community Supervision,[1]<br><br>                Respondent. | No. 9:16-cv-01020-JKS<br><br>MEMORANDUM DECISION |

Ricky Jackson, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. At the time he filed his Petition, Jackson was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Cayuga Correctional Facility. The DOCCS's inmate locator website (http://nysdoccslookup.doccs.ny.gov/, Department ID Number 12-B-2289), indicates that Jackson was conditionally released to parole supervision on April 24, 2018. Jackson has filed a change of address with this Court. Respondent has answered the Petition, and Jackson has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On April 26, 2012, Jackson was charged in a 28-count indictment arising from his sale of cocaine and a loaded handgun to confidential informants ("CI") in multiple transactions over a roughly 5-month period in 2011. On June 26, 2012, Jackson appeared with counsel for the

---

[1] Because Jackson has been conditionally released from state prison, Anthony J. Annucci, Acting Commissioner, New York Department of Corrections and Community Supervision, is substituted as Respondent. FED. R. CIV. P. 25(c).

purpose of accepting a plea agreement. Under that agreement, Jackson would plead guilty to 2 counts of second-degree criminal sale of a controlled substance; second-degree criminal possession of a controlled substance; second-degree criminal possession of a weapon; and fourth-degree conspiracy. In exchange for his guilty plea, Jackson would be sentenced to 4 concurrent imprisonment terms of 7 years with 5 years' post-release supervision for each of the two second-degree criminal sale of a controlled substance counts, the second-degree criminal possession of a controlled substance count, and the second-degree criminal possession of a weapon count. Jackson would also be sentenced to a concurrent indeterminate term of 2 to 4 years' imprisonment on the conspiracy count.

At his change of plea hearing, Jackson confirmed his understanding of the proposed sentence. He further acknowledged that he understood that, as a result of the plea, he would be waiving his right to a jury trial and all the rights that he would otherwise be afforded at a trial, including the right to call and cross-examine witnesses, and testify on his own behalf. He also answered in the affirmative when asked if he understood that he was pleading guilty to felonies and that his convictions after a plea, which were equivalent to verdicts after trial, would increase his punishment in the event he was subsequently convicted of another felony within the next 10 years. Jackson affirmed that he was waiving his right to remain silent and would be required to admit that he had committed the crimes. Prior to offering that plea, Jackson stated that he had not consumed alcohol or drugs prior to coming to court that day and had not been forced or threatened to enter the plea agreement. The judge then recited the factual allegations of the charges encompassed in the plea agreement, and Jackson admitted that the allegations for each of the charges were true and pleaded guilty to each charge. The court then stated, "Based upon

your responses to my questions I find these pleas of guilty are knowingly, intelligently, and voluntarily made and I'll accept those pleas of guilty to those charges."

Before sentencing, Jackson admitted that he understood his status as a second felony offender based on his prior conviction of fifth-degree criminal possession of a controlled substance and formally admitted to his prior felony conviction. He was subsequently sentenced as a second felony offender to an aggregate determinate imprisonment term of 7 years and 5 years' post-release supervision, as contemplated in the plea agreement.

Through counsel, Jackson appealed to the Appellate Division of the New York Supreme Court, asking that the appellate court, in the interest of justice, reduce his sentence to the minimum legally-permissible term of 6 years' imprisonment. The Appellate Division unanimously affirmed the judgment against Jackson in a summary opinion issued on November 13, 2015. *People v. Jackson*, 18 N.Y.S.3d 913, 914 (N.Y. App. Div. 2015). Jackson petitioned for review in the New York Court of Appeals, which was denied without comment on February 1, 2016. *People v. Jackson*, 51 N.E.3d 571, 571 (N.Y. 2016).

While his direct appeal was pending, Jackson filed three *pro se* motions to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10. The county court denied each of the motions, and the appellate court denied leave to appeal with respect to the first two motions.[2] The second § 440.10 motion is the only motion that presented claims raised in the instant petition. In that motion, Jackson argued that the prosecution violated his due process rights by failing to comply with CPL § 700.70, which precludes the use at trial of

---

[2] The record does not indicate that Jackson petitioned for leave to appeal the denial of his third post-conviction motion.

evidence obtained from a wiretap unless the prosecution produces the wiretap warrant and underlying application within 15 days of arraignment. N.Y. CRIM. PROC. L. § 700.70. The county court denied the motion on both procedural grounds and on the merits in a reasoned, unpublished decision issued on November 30, 2015.

Jackson then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on August 16, 2016. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Jackson argues that his due process rights were violated by the prosecution's failure to disclose a wiretap warrant and that the prosecution violated its mandatory discovery obligations by not providing him exculpatory information found in that warrant.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would

give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.   Mootness

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation omitted). Thus, a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983). "[I]f an event occurs during the course of the proceedings or an appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case" as moot.

*United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation and internal quotation marks omitted).

As previously mentioned, the record before this Court indicates that Jackson has been conditionally released from prison to parole supervision. However, a petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. Rather, the matter will remain a live case or controversy if there remains "some concrete and continuing injury" or "collateral consequence" resulting from the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In cases where the petitioner challenges the conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement" even if those collateral consequences "are remote and unlikely to occur." *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) (emphasis omitted) (quoting *Spencer*, 523 U.S. at 8). This presumption of collateral consequences has been justified on the theory that "most criminal convictions do in fact entail adverse collateral legal consequences," including deportation, enhancement of future criminal sentences, and certain civil disabilities such as being barred from holding certain offices, voting in state elections, and serving on a jury. *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (quoting *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)). Accordingly, because Jackson is still in the custody of

the New York DOCCS[3] and, in any event, still subject to collateral consequences of his conviction, Jackson's Petition has not been rendered moot by his release from prison.

B.   Merits

Jackson's Petition raises two related claims. First, he argues that the prosecution failed to disclose a wiretap. He similarly alleges in Ground 2 that the prosecution wrongfully withheld exculpatory evidence when it refused to disclose the wiretap.

Jackson fails to demonstrate that he is entitled to relief on either claim. It is well settled that a guilty plea represents a "break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'" *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett*, 411 U.S. at 267); *see United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non jurisdictional defects in the prior proceedings."). By voluntarily pleading guilty,[4] Jackson forfeited his right to bring claims premised on errors that occurred prior to the plea process. This

---

[3]   A prisoner conditionally released on parole supervision remains in the legal custody of the DOCCS until the expiration of his full maximum expiration date. *See* N.Y. Department of Corrections and Community Supervision Website, *Offender Information Data Definitions*, http://www.doccs.ny.gov/calendardatadefinitions.html (noting under "conditional release date" that "[i]f an inmate is conditionally released, he or she will be under parole supervision of some level until his or her term expires (i.e., when the maximum expiration date is reached")).

[4]   Jackson does not allege in his Petition that his guilty plea was not voluntarily, intelligently, or knowingly made, and the record in this case undermines any such contention.

8

includes pretrial discovery claims that allege a deprivation of due process. *See, e.g.*, *Ortberg v. Moody*, 961 F.2d 135, 135, 136-38 (9th Cir. 1992) (guilty plea barred habeas consideration of claims alleging, among other things, denial of complete discovery); *Wilson v. United States*, 28 F.3d 1215, at *1 (6th Cir. Jun. 23, 1994) ("[Petitioner's] allegation of lack of discovery is a non-jurisdictional defect which cannot be challenged following the entry of a valid guilty plea."). The *Tollett* bar thus forecloses Jackson's due process claim regarding the prosecution's alleged failure to disclose the wiretap warrant and application (Ground 1).

In any event, the county court also found Jackson's claim without merit:

> A review of the Court's record and as accurately reflected in the People's response, there is no evidence whatsoever that an 'eavesdropping warrant' was ever applied for or granted in the course of the investigation of the instant case. Furthermore, there was no evidence that was collected during the investigation and/or any surveillance that would have been the subject of a warrant requirement. The [petitioner's] conclusory, vague, and broad claims regarding a reference to an alleged, non-existence eavesdropping warrant does not in anyway constitute a valid claim upon which to vacate the instant judgement of conviction.

Jackson provides nothing more than his conclusory assertion that such evidence exists, which is wholly insufficient to rebut the presumed correctness of the state court's finding, which is also reasonable and fully supported by the record. Jackson is thus not entitled to relief on Ground 1 in any event.

Jackson similarly argues in Ground 2 that the prosecution failed to disclose exculpatory evidence. It appears that Jackson contends that the wiretap warrant contains exculpatory evidence that the prosecution was required to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "To establish a *Brady* violation, a petitioner

must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Under these principles, a *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed. *Strickler*, 527 U.S. at 281. That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

As an initial matter, it is not clear whether the *Tollett* bar also applies to claims alleging that the prosecution violated *Brady* prior to the entry of the guilty plea. Some district courts within this Circuit have opined that an individual's right to receive *Brady* material cannot be waived, notwithstanding the existence of a valid guilty plea. *See United States v. Sapia*, No. 02 CIV 649, 2002 WL 620483, at *9 n. 4 (S.D.N.Y. Apr. 18, 2002) (citation omitted), *remanded on other grounds Sapia v. United States*, 108 F. App'x 661 (2d Cir. Aug. 4, 2004); *see also Brown v. Berbary*, No. 01-CV-6500, 2004 WL 1570258, at *4-5 (W.D.N.Y. June 16, 2004); *Fambo v. Smith*, 433 F.Supp. 590 (W.D.N.Y.) (passim), aff'd, 565 F.2d 233 (2d Cir. 1977). These courts have concluded that, where a *Brady* claim may be construed as an attack on the voluntariness of a defendant's plea, it survives the entry of his guilty plea. *See Tollett*, 411 US. at 267.

The Court need not decide whether the *Tollett* bar applies, because, even assuming that it does not, Jackson's *Brady* claim is without merit. As discussed above, Jackson fails to demonstrate that the wiretap warrant and application even existed, much less that the prosecution

withheld them, that they contained evidence favorable to Jackson, or that any such non-disclosure prejudiced him.  Jackson is therefore not entitled to relief on this claim either.

## V. CONCLUSION

Jackson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 15, 2018.

                  /s/ James K. Singleton, Jr.
                 JAMES K. SINGLETON, JR.
                Senior United States District Judge